Battle, J.
 

 The question presented in this case, is, whether the defendant, who was born the natural daughter of the plaintiffs’ alleged testator, was ever properly legitimated according to law; for, if she was, then, the order of the Court, by which her name was stricken from the record as a party defendant to the issue of
 
 devisavit vel non,
 
 was erroneous, and ought to be reversed.
 

 The decree, by virtue of which the defendant claims, that she was made legitimate to her reputed father, Solomon Hall, was rendered by the Superior Court of law, for the county of Rowan, at the Spring Term, 1842, many years before the Revised Code went into effect, and the question of the validity
 
 *171
 
 of that decree depends on tbe 8tb section of tlie 12tb chapter of the Eevised Statutes, and the act of 1838, chap. 4. The section of the chapter of the Eevised Statutes above referred to, enacts, “The putative father of any illegitimate child, or children, may apply, by petition in writing, in either the county or superior court of the county in which such father may reside, praying that the said child, or children, be declared legitimate, and if it shall appear to the said court, from the oath of said petitioner, and such other evidence as the court may require, that the petitioner hath intermarried with the mother of. the said child or children, or that the mother is dead, or married to another, or lives out of the State, and that such petitioner is reputed the father of said child, or children, the said court may thereupon declare and pronounce the said child, or children, legitimated accordingly.” The 9th section of the act declares what shall be the effect of the legitimation, and the 10th directs the decree to be recorded. It is manifest that the act makes no distinction between married and single men, but requires that the petitioner, whether married or single, be reputed to be the father of the child or children, whose legitimation is sought. As the petitioner, in the present case was, in fact, a married man at the birth of his illegitimate child, it is contended that the decree, for her legitimation was void, by the force and effect of the act of 1838, chap. 4, which is entitled “ An act to amend an act of the Eevised Statutes, chapter 12, entitled Bastard Children,” and which provides as follows : “The putative lather of any illegitimate child or children, may apply by petition in writing, either in the county or superior court, of the county in which such father may reside, praying that such child or children, be declared legitimate. If it shall appear to the court that such petitioner is reputed the father of such child or children, the said court may, thereupon, declare and pronounce the said child or children, legitimated accordingly: Provided, that nothing herein contained shall be so construed as to extend such legitimation further than is provided in the 9th section of the above recited act:
 
 Provided
 
 fwrther, that no
 
 *172
 
 bastard child or children, whose putative father was married at the time of his, her, or their birth, shall come within the provisions of this act.”
 

 The counsel for the plaintiffs contend, that the effect of this act was to supersede entirely the 8th section of the 12th chapter of the Revised Statutes, and thereby impliedly to repeal it; and they then infer, that the decree in favor of the legitimation of the defendant, obtained by her reputed father, who was a married man at the time of her birth, was null and void.
 

 The counsel for the defendant contend, on the contrary, that the latter was not a repeal of the former, because they were not necessarily inconsistent, and that so far from intending a repeal, the latter act
 
 professes
 
 to amend the former, and that the last
 
 proviso
 
 to the act of 1838, is expressly confined to
 
 this act.”
 
 They contend further, that supposing that the former act was repealed, as to its 8th section, yet, the decree of legitimation, having been made by a court having jurisdiction of the subject, and one whose judgment, on that subject, cannot be revised, is not liable to be impeached by evidence, that the petitioner was a married man at the time of the birth of his illegitimate child.
 

 After much reflection, we have come to the conclusion that the case is with the defendant, upon both the grounds taken in the argument of her counsel. The act of 1838, so far from professing to repeal any part of the act contained in the Revised Statutes, declares, by its title, a purpose to amend it; and
 
 the proviso,
 
 which is supposed to have the effect of superseding the 8th section, closes by declaring that the cases, upon which it is to operate, must “ come within the provisions of this actthat is, the act of 1838. If there be any case, then, upon which the latter act can operate, which is not included in the former, the two acts are not inconsistent, and effect may given to both. The former act provides for four cases, in which a putative father may legitimate his bastard child t; to wit, where he has married the mother,
 
 or
 
 where she is dead;
 
 or
 
 where she lives out of the State,
 
 or
 
 where she has married another man. But if the mother were living in
 
 *173
 
 the State, unmarried to him, or any other man, then he could not legitimate his child, by her, under the former act, yet, he could do so under the latter, provided he was not a married man at the time when his illegitimate child was horn. That instance alone, without seeking to enquire whether any other could be stated, is sufficient to show that the two acts are not so inconsistent as to prevent their standing together, and from the peculiar phraseology of the latter act, we are not at liberty to construe it to be an implied repeal of the 8th section of the former, unless necessity compels us to do so by the utter inability to give any other operation to the latter.
 

 But, if we are mistaken in this, we are confident in the opinion, that the decree of legitimation in this case, cannot be impeached by proof, that the putative father was a married man when his child was born. Upon this point, we think that the case of
 
 Sampson v.
 
 Burgwyn, 3 Dev. and Bat. Rep. 28, to which we were referred by the defendant’s counsel, isa direct and decisive authority. That was the case of the emancipation of a slave by the order of the County Court. The law conferred upon that court the power to emancipate slaves only upon the performance, by them, of meritorious services. The plaintiff claimed his freedom, and in supportof his claim, produced a record of the County Court, in which it was stated that “ upon the petition” (of the master) “ it is ordered,” (that the slave) “ he emancipated and set free from slavery.” No meritorious services were mentioned in the order, and it was shown that none could dave been performed, as the plaintiff was at that time, only about two years old. The Court held that the silence of the record, as to the meritorious services, made no difference, and that it could not “ be impeached by presumption or evidence, that the plaintiff had not or could not perform them. The acts of a court on a subject within its jurisdiction, are presumed to be right; and that presumption cannot be contradicted, when the court is one of exclusive jurisdiction, whose judgments are not subject to revision.” So, in the case before us, either the county or superior court had a jurisdiction over the subject of the legitimation of has-
 
 *174
 
 tard children, so far exclusive, that its judgments were not subject to revision. The act of the Superior Court of Rowan, in making the decree for the legitimation of the defendant, upon the petition of her putative father, must be presumed to have been right, and that presumption cannot now be contradicted.
 

 The order made in the Court below, must be reversed, and this -opinion must be certified, to the end, that the Court may proceed in the cause according to law.
 

 Pee CukiaM, Order reversed.